# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LOUVERT SEALS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW SAUL, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | No. 18 C 7738 <br><br> Judge Jorge L. Alonso |

## MEMORANDUM OPINION AND ORDER

Plaintiff Louvert Seals seeks judicial review of the defendant Commissioner of Social Security's denial of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1383(c)(3). For the reasons set forth below, the Court reverses defendant's decision and remands this case to the Social Security Administration for further proceedings.

## Background

On December 2, 2014, plaintiff filed an application for SSI, alleging disability beginning in December 2012 based on post-traumatic stress disorder, knee pain, and high blood pressure. (*See* Certified Copy of Administrative Record ("R.") at 13, 93-94, ECF No. 10-1.) During the review of the application, the agency psychiatric consultant filled out a standard Psychiatric Review Technique form and reported that plaintiff suffered from numerous mental health issues. (*Id.* at 86; *see id.* at 20.) In the blank for "Difficulties in Maintaining Concentration, Persistence or Pace," the psychiatric consultant wrote, "moderate." (*Id.* at 86.) On May 14, 2015, the Social

Security Administration ("SSA") denied plaintiff's application, determining that, although plaintiff's condition caused "some restrictions in [his] ability to function," plaintiff was not disabled because his condition did not prevent him from performing "unskilled work." (*Id.* at 94.) Plaintiff sought reconsideration, and in the reconsideration proceedings the agency psychiatric consultant again recognized in a Psychiatric Review Technique that plaintiff suffered from moderate difficulties in maintaining concentration, persistence or pace, among other issues. (*Id.* at 102, 106-08.) Again, however, the SSA determined that plaintiff's condition was not severe enough to keep him from working. (*Id.* at 110.)

Plaintiff sought a hearing before an administrative law judge ("ALJ"). At the hearing, the ALJ asked a vocational expert ("VE"), hypothetically, whether there is any work available in the national economy, for a person "who can do light work, frequent ramps and stairs, no ladders, ropes and scaffolds, frequent stoop, occasional kneel, crouch and crawl, occasional hazards, simple, routine, repetitive tasks, simple work-related decisions, occasional changes and occasional interaction with supervisors and coworkers and no interaction with the public," but can handle "no tandem tasks and no production rate pace.". (*Id.* at 66, 67-68.) The VE responded that there are positions that a person with such limitations would be able to fill; representative jobs included shipping-and-receiving weigher, lamination inspector, and final inspector, of which there were 167,000 combined positions in the national economy. (*Id.* at 66-68; *see id.* at 29-30.)

To determine whether an SSI claimant is disabled, the SSA follows a five-step review process, sequentially assessing "(1) the claimant's current work activity; (2) [if none,] the medical severity and duration of the claimant's impairments; (3) whether the claimant's impairments meet or medically equal the requirements of an impairment listed in the regulations; (4) [if not,] whether

the claimant has the residual functional capacity to return to past relevant work; and (5) if the claimant cannot return to past relevant work, whether he or she can 'make an adjustment to other work' in the national economy." *Varga v. Colvin*, 794 F.3d 809, 812 n. 2 (7th Cir. 2015) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). The ALJ followed this five-step process and, on October 6, 2017, in a written decision, she ruled that plaintiff was not disabled. The ALJ explained that plaintiff had not engaged in substantial gainful activity since filing his application, and he had several severe impairments in the form of anxiety, depression, substance abuse, osteoarthritis in the right knee, and obesity; in particular, the ALJ gave "great weight" to the agency psychiatric consultants' assessments of plaintiff's mental condition. (R. at 15-16, 20.) However, the ALJ found that none of these impairments rose to a level of severity to match the impairments listed in the regulations (*id.* at 17 (citing 20 C.F.R. § 416.925, 20 C.F.R. Part 404, Subpart B, App. 1)), and "based on the . . . evidence and [plaintiff's] moderate limitations in . . . concentrating, persisting, and maintaining pace," plaintiff's "residual functional capacity," *i.e.*, the maximum he can "still do despite [his] limitations," 20 C.F.R. § 404.1545, permitted him to perform light work, with certain restrictions. (R. at 26-27.) Based on the VE's testimony, the ALJ determined that, while plaintiff could not perform his relevant past work, he was capable of making a "successful adjustment to other work that exists in significant numbers in the national economy," and she concluded that plaintiff is therefore "not disabled under section 1614(a)(3)(A) of the Social Security Act." (*Id.* at 30.)

Plaintiff sought review of the decision by the SSA's Appeals Council, but on September 21, 2018, the Appeals Council denied the request for review, finding no legal error, abuse of

discretion, or other defect in the ALJ's decision. (*Id.* at 1.) Plaintiff now seeks review in this Court.

## Discussion

When the Social Security Appeals Council denies an unsuccessful SSI applicant's request for review, "the ALJ's decision becomes the final decision of the [Commissioner]." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The claimant may seek review of a final decision in a federal district court, which may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The reviewing court's role is "extremely limited." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). The Court "may reverse the Commissioner's final decision only if it is not supported by substantial evidence or is based on a legal error." *Hopgood v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003) (noting that "[t]his is a deferential but not entirely uncritical standard"). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In rendering a decision, the ALJ "must build a logical bridge from the evidence to h[er] conclusion." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013). Judicial review is "limited to the reasons articulated by the ALJ in her decision." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *see also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) ("When reviewing for substantial evidence, we do not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.").

A person is entitled to a monthly SSI payment under the Social Security Act if he is disabled and his income and other financial resources fall below a statutory threshold. *See* 42 U.S.C. § 1382. A person is "disabled" for purposes of SSI if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3)(A). Further, the person's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(A). The statute defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

Plaintiff contends that, in following the SSA's five-step process for assessing whether he was disabled, the ALJ erred at step five by determining that plaintiff had the residual functional capacity ("RFC") to perform other work available in the economy. According to plaintiff, the ALJ's conclusion on this point lacked adequate evidentiary support to the extent it depended on the VE's answer to the ALJ's hypothetical question, in which the ALJ did not account for plaintiff's moderate difficulties in concentration, persistence, and pace.

The Court agrees with plaintiff. The Seventh Circuit has explained "[a]gain and again" that "when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations," unless the VE has independently reviewed the record. *Winsted v. Berryhill*, 923 F.3d 472, 476-77 (7th Cir. 2019)

(citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), *Varga*, 794 F.3d at 814-15, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003)); *see DeCamp v. Berryhill,* 916 F.3d 671, 675-76 (7th Cir. 2019). Generally, "employing terms like 'simple, repetitive tasks' on their own" in a hypothetical question to a VE does not suffice to account for limitations of concentration, persistence and pace because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620; *see Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[O]bserving that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift."); *see also Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014) ("[W]e have repeatedly rejected the notion that a hypothetical . . . confining the claimant to [unskilled work,] simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.")).

Similarly, posing to the VE a hypothetical limiting the claimant to "unskilled work" with no "fast-paced production line or tandem tasks" does not suffice to account for a moderate limitation on concentration, persistence, and pace. *DeCamp*, 916 F.3d at 675-76 ("We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.") (citing *Moreno*, 882 F.3d at 730, and *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698-99 (7th Cir. 2016)). Additionally, an ALJ's hypothetical does not sufficiently account for moderate limitations in concentration,

6

persistence and pace by limiting the claimant to "exercis[ing] simple work place judgments," in addition to routine work, simple instructions, and no more than occasional changes in the workplace setting. *Moreno*, 882 F.3d at 730.

In this case, the ALJ took just the sort of "shortcut[]," *cf. Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020), that the Seventh Circuit proscribed in the above cases by failing to connect the limitations included in the hypothetical to the plaintiff's documented difficulties in concentration, persistence, or pace. She asked the VE, in pertinent part, about the employment prospects for someone who can handle "light work, . . . simple, routine, repetitive tasks, simple work-related decisions, occasional changes and occasional interaction with supervisors and coworkers and no interaction with the public," but "no tandem tasks and no production rate pace." There is "no magic[-]words requirement," *Crump*, 932 F.3d at 570, but under the Seventh Circuit's cases, particularly *DeCamp* and *Moreno*, this hypothetical does not suffice to account for plaintiff's difficulties in concentration, persistence, and pace. There is no "accurate and logical bridge between the evidence of mental impairments" in concentration, persistence, and pace, on the one hand, "and the hypothetical and the mental RFC," on the other hand, given that the ALJ did not mention those impairments in the hypothetical or connect them to the limitations she did mention. *Yurt*, 758 F.3d at 859; *see Crump*, 932 F.3d at 570 ("'[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace.") (quoting *Varga*, 794 F.3d at 813).

Limiting plaintiff to jobs that required him to perform only simple, routine tasks and make simple decisions without having to maintain a "production rate pace" did not account for the

7

possibility that, given his moderate difficulties in concentration, persistence, and pace, plaintiff might not be able to "do so on a sustained basis" at any pace, even a slow one. *Crump*, 932 F.3d at 570. During the hearing before the ALJ, plaintiff's counsel asked the VE "what percentage of the day . . . the individual can be off task and still sustain employment," and the VE answered that "anything above 15% precludes all unskilled work." (R. at 71.) The record does not reveal whether plaintiff could generally remain on task for 85% of a workday.[1] And, as in *O'Connor-Spinner*, the Court is aware of no authority "supporting [any] speculation that eliminating jobs with strict production quotas or a fast pace may serve as a proxy" for apprising the VE of the plaintiff's moderate limitation in concentration, persistence, and pace; the VE may well have "substantiated that speculation if asked, but . . . the ALJ did not ask[, which is] troubling given the vocational expert's concession that [a person] would be very unlikely to maintain employment if [he] was off task 15% or more of the time." *See* 832 F.3d at 698-99 (internal quotation marks omitted); *see also DeCamp*, 916 F.3d at 675-76.

Defendant cites *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019), in support of his position. In *Dudley*, an unpublished, nonprecedential decision, the Seventh Circuit ruled that the ALJ's hypothetical question to the VE, which was couched in terms similar to those of the hypothetical the ALJ offered the VE in this case, adequately accounted for the claimant's difficulties in concentration because his "greatest limitations [were] stress- and panic-related," which were addressed by restricting him to simple, routine tasks involving simple decision-making, stable work settings requiring little interaction with others, and moderate or slow-paced

---

[1] One of the psychiatric consultants stated that plaintiff could "complete a normal workday" (R. at 27, 108), but that does not directly address the percentage of the workday in which he could remain on task.

work. *Id.* at 842. But even if *Dudley* were binding precedent, the case is distinguishable. Unlike in *Dudley*, plaintiff's limitations appear to stem from deeper problems than difficulties handling stress. Evidence that the ALJ appeared to credit showed that plaintiff suffered from serious-seeming symptoms of depression or other mental illness, including hearing voices. (*See* R. at 27-28.) Plaintiff testified at the hearing that he was unable to concentrate long enough to read anymore, and the ALJ seemed to find plaintiff credible at his hearing. (*Id.* at 58; *see id.* at 27-28.) The ALJ did not connect plaintiff's particular difficulties in concentration, persistence, and pace, or their underlying cause, to the limitations contained in her hypothetical to the VE, and this defect requires remand. *See Yurt*, 758 F.3d at 858 (explaining that the Seventh Circuit had "allowed the hypothetical in *Johansen* [*v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002)] to stand despite its omissions because its description of 'repetitive, low-stress work' specifically excluded positions likely to trigger the panic disorder that formed the basis of the claimant's limitations in concentration, persistence, and pace," but a hypothetical cannot stand when it does not similarly "capture [the claimant's] moderate difficulties"); *cf. Josefyk v. Berryhill,* 923 F.3d 492, 498 (7th Cir. 2019) (ALJ's hypothetical that restricted claimant to "routine tasks and limited interactions with others" sufficed to the extent that the claimant's moderate difficulties in concentration, persistence, or pace "surface[d] only when he is with other people or in a crowd").

Finally, defendant argues that, even if the ALJ's hypothetical or RFC assessment were flawed, the error would be harmless because plaintiff does not suggest what sort of work restrictions the ALJ should have included. *See Josefyk*, 923 F.3d at 498. It does strike the Court as potentially plausible that the VE might have suggested the exact same jobs even if alerted to plaintiff's difficulties in concentration, persistence, or pace. But the record is not detailed enough

9

on this point to permit the Court to say so for certain. The transcript simply does not reveal what the VE's answer to a hypothetical question that adequately accounted for plaintiff's moderate difficulties in concentration, persistence, and pace might have been, nor does it reveal whether the VE had independently reviewed the record. Under these circumstances, "the vocational expert's assessment of the jobs available to [plaintiff] necessarily is called into doubt, as is the ALJ's conclusion that [plaintiff] is not disabled under the Social Security Act." *Moreno*, 882 F.3d at 730; *see Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When the ALJ supplies a deficient basis for the VE to evaluate the claimant's impairments, this error necessarily calls into doubt the VE's ensuing assessment of available jobs.").

Plaintiff also argues that the ALJ erred by finding that the 167,000 jobs that he could perform amounted to work that "exists in significant numbers," but the Court need not address this argument because the determination that he could perform this work in the first place was flawed. Because the ALJ failed to include or account for plaintiff's moderate limitations in concentration, persistence or pace in his RFC and hypothetical to the VE, the Court must reverse and remand this case to the SSA for further proceedings.

## **Conclusion**

For the reasons set forth above, the Court denies defendant's motion for summary judgment [15], reverses the Social Security Administration's decision, and remands this case to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order. This case is terminated.

SO ORDERED.                    ENTERED:   April 7, 2020

_____
**HON. JORGE L. ALONSO**
**United States District Judge**